JACKSON, ex dem. HENDRICKS vs. ANDREWS, CASE and
HUNTINGTON.

Where a bill in chancery is filed by a creditor to avoid a conveyance of land
as fraudulent, and while the suit is pending, and in a course of active
prosecution, a purchase is made by a third person from the grantee of the
alleged fraudulent deed, if the deed sought to be avoided is adjudged fraud-
ulent, the deed of the purchaser is a nullity as to the title established by the
pending suit.

The purchase of land *pending a suit* concerning it, is champerty, the convey-
ance is *absolutely void*, even when the purchase is *bona fide;* it seems, how-
ever, the purchaser in such case would not be subjected to the penal conse-
quences of the act.

A possession under a *void* title does not defeat the operation of a conveyance,
on the ground of the premises being held adversely, for in such case the
possession is not adverse.

Several defendants may be joined in one suit in ejectment, where the plain-
tiff's title in relation to all is the same, although their *possessions* may be
*several* and *not joint;* each defendant may be found separately guilty for
the part of the premises in his possession, and the plaintiff have judgment
against them severally.

THIS was an action of *ejectment*, tried at the Cortland cir-
cuit in June, 1829, before the Hon. SAMUEL NELSON, then
one of the circuit judges.

Title was shewn in the lessor of the plaintiff to the premises
in question, being part of lot No. 60 *Homer*, under a *sheriff's
sale*, by virtue of an execution issued on a judgment obtained
by the lessor of the plaintiff against *Abraham Franklin* and
others, docketed the 28th May, 1808. Lot No. 60, Homer,
was conveyed by the sheriff of Cortland in pursuance of such
sale by deed, bearing date the 15th November, 1821, to *Hen-
dricks*, the lessor, and to *Elisha Tibbits;* and on the 5th Ju-
ly, 1826, Tibbits conveyed all his interest in the lot to Hen-
dricks. The defendants being admitted to be in possession in
*severalty* of *distinct parcels* of the lot at the commencement of
the suit, the plaintiff rested.

The defendant admitting *Abraham Franklin* to be the com-
mon source of title to both parties, produced an exemplifica-
tion of the *record of* a deed, bearing date " the twenth ninth
day of March, in the year of our Lord one thousand eight hun-

dred *and* between *Abraham Franklin* of, &c. of the first part, and *Henry Franklin* of, &c. of the second part," whereby, for the consideration of $3000, No. 60, Homer, and various other tracts of land are conveyed in fee to the grantee. This deed purported to have been acknowledged ⸱before a proper officer on the 29th March, 1808, and to have been recorded in the clerk's office of the county of Onondaga on the 21st April, 1808. Having produced this evidence, the defendants insisted that the title of *Abraham Franklin* having been divested in 1800, and the judgment under which the plaintiff claimed not having been docketed until 1808, the plaintiff was not entitled to recover.

To destroy the effect of this evidence, the plaintiff produced a decree in chancery, made on the 20th January, 1817, whereby certain conveyances of real estate, from Abraham Franklin to Henry Franklin, made in February and March, 1808, were adjudged to have beeen fraudulently executed, and were declared to be null and void in law. This decree was made in a suit in chancery, in which Hendricks, the lessor of the plaintiff, was complainant, and Abraham Franklin, Henry Franklin and others were defendants. In the bill, which was filed on the 3d June, 1809, the plaintiff charged that he was a judgment creditor of Abraham Franklin to a large amount; that Abraham Franklin had fraudulently conveyed away his real estate specifying some of the conveyances made by him, and alleging that he could not specify all; that he had issued execution on his judgment, and could not obtain satisfaction by reason of such fraudulent transfers and praying a discovery of the conveyances made to Henry Franklin, and that the same might be avoided, &c. In the answer of Henry Franklin he admitted that Abraham Franklin, by deed, bearing date the 29th March, 1808, for the consideration of $3000, conveyed to him lot No. 60, Homer, and various other tracts, and that such deed was acknowledged on the 29th March, 1808, and recorded on the 21st April, 1808, in the clerk's office of the county of Onondaga, which conveyance he alleged was executed to him to secure him for a debt due to him, and to indemnify him for certain responsibilities assumed for Abraham Franklin.

NEW-YORK,
May, 1831.

Jackson
v.
Andrews.

The decree avoided such conveyances as were admitted *in the pleadings* to have been executed.

The defendants now produced a deed from *Henry Franklin*, bearing date the 10th November, 1810, whereby, for the consideration of $1600, he conveyed lot No. 60, *Homer*, to J. N. Cushman, and deduced title to themselves, from Cushman to the several portions possessed by them, and as the case states, *offered to shew* an adverse possession of more than twenty years before suit brought, by proving that they, more than twenty years before suit brought, were respectively in possession of the premises in question, but disclaiming to have any right or pretence of right to such possession, other than that derived through the deed from Abraham Franklin to Henry Franklin; insisting that the said deed having been recorded as a deed bearing date in 1800, and prior to the docketing of the judgment in favor of the lessor, and the defendants having purchased on the faith of that record, they were entitled to protect themselves under it as a deed of that date; which evidence thus offered to be given was objected to, and rejected. The defendants having shewn that on the 5th July, 1826, and since, they were in possession of several and distinct portions of lot No. 60, *in severalty*, and this action having been brought against them *jointly*, insisted that the plaintiff was not entitled to a verdict, or if entitled, that a verdict could be rendered against one only of the defendants, and that the plaintiff was bound to make his election; and they further insisted, that being in possession, holding adversely at the date of the deed from Tibbits to the lessor, that deed was void, and consequently the plaintiff, if entitled to recover, could recover but a moiety of the premises claimed. Under the direction of the judge a verdict was entered against each of the defendants for the premises in his separate possession, subject to the opinion of this court, upon the question whether the plaintiff was entitled to recover, and if so, whether he should recover the whole or only moiety of the premises in question.

*J. A. Collier*, for the plaintiff. The deed to Henry Franklin having been declared void by a decree in chancery, and the title of the defendants derived from him having been ac-

quired during the pendency of the suit prosecuted for the avoidance of that deed, their conveyances also are void and inoperative. The suit in chancery was notice to all the world, and the defendants holding that title of Henry Franklin, are in no better situation than he would have been in had he not conveyed. The conveyances, to the defendants during the pendency of the suit being absolutely void, conferred not even a colorable title to sustain the defence of an *adverse holding ;* consequently there was nothing to prevent the operation of the deed from Tibbits to Hendricks: by the purchase the defendants became *quasi* tenants to Hendricks and Tibbits.* Although the suit was *joint,* the plaintiff is entitled to recover against each defendant the premises in his separate possession.

*J. A. Spencer,* for the defendants. The defendants ought not to be considered purchasers *pendente lite ;* the bill does not *specify* and charge the deed under which they derive title as having been fraudulently executed ; the defendants were not parties to the suit, and there is no pretence that they had actual knowledge of its existence. On the contrary, the deed to Henry Franklin of lot No. 60 bears date in 1800, and the deed charged as fraudulent are alleged to have been executed in 1808 and 1809 ; they may therefore well be considered as *bona fide* purchasers. At all events, at the date of the deed from Tibbits to Hendricks, the defendants held adversely under color of title, and the plaintiff, if entitled to recover, can recover but a moiety of the defendants' possessions. Besides, he can recover against but one of the defendants, having failed in shewing a *joint* possession. The defendants are not *joint* trespassers. If the plaintiff recover against all, they may be subjected to a joint action for *mesne profits,* although it is admitted that their possessions are separate and distinct ; each one holding in *severalty* the land in his separate possession.

* In *Bacon, ex dem. Howe and others,* v. *Smith,* decided in May term, 1830, it was decided that a possession under a sheriff's sale on a *fraudulent judgment* was not *adverse,* so as to avoid a conveyance from a purchaser under a *bona fide* judgment to a third person ; that the possession of the tenant was as the possession of the defendant the party to the fraudulent judgment, who after the sale under the *bona fide* judgment was *quasi* tenant to the purchaser.

*Collier,* in reply. In the action for *mesne profits,* each de-fendant will be liable only for the premises in his separate possession. If a joint action is prosecuted, separate dama-ges may be assessed. As to the want of notice that the bill was filed to avoid the deed under which the defendants claim, although not specified in the *bill,* it is particularly set forth in the *answer.* The suit was notice sufficient to put them on inquiry, and by reference to the pleadings, it would have been seen that the title under which they purchased was part of the matter in controversy.

*By the Court,* SUTHERLAND, J. The first inquiry in this case is as to the effect of the proceedings in chancery, instituted by the lessor of the plaintiff, upon the rights of the parties. It is not pretended that Henry Franklin had any other title to these premises than such as he acquired by the deed from Abraham Franklin; and that deed was expressly adjudged and pro-nounced to have been void on the ground of fraud; not inci-dentally and collaterally, but in a proceeding instituted in proper form and with proper parties, for the express purpose of testing its validity. Again; the conveyance from Henry Franklin to Cushman was made in November, 1810, while the suit in chancery against the grantor, calling in question his title to this identical property, was pending and in a course of active and persevering litigation. This conveyance was void on the ground of a *lis pendens.* A *lis pendens* duly prosecuted is notice to a purchaser, so as to affect and bind his interest. The conveyance is so far a nullity, that it cannot avail the party against the title established by the pending suit. This subject is very elaborately considered by Chancellor Kent, in *Murray* v. *Ballou,* 1 Johns. Ch. R. 573, and *Murray Lil-burn,* 2 id. 444, where all the cases are reviewed, and the wis-dom and policy of the rule are vindicated with great learning and ability. 1 Cas. in Ch. 150. 2 Ch. Cas. 115. 1 id. 301. Rep. Temp. Finch. 321. 1 Vernon, 286, 318, 459. 2 id. 216. 2 P. Wms. 482. 2 Atk. 174. 3 id. 392. Ambl. 676. 11 Ves. 194. 2 Ves. & Beame, 200. 2 Ball & Beat. 167. 2 Madd. Ch. 189, 190, 324, 5.

The purchase of land *pending* a suit concerning it, is cham-perty under the statute. 1 R. L, 162, This was expressly

adjudged in *Jackson* v. *Ketchum*, 8 Johns. R. 484, and in *Mowre* v. *Weaver & Postern*, Moore 655. The conveyance in such a case is absolutely void, even where the purchase is *bona fide*, although the party will not be subject to the penal consequences of the act. The conveyance from Abraham to Henry Franklin, and from Henry to Cushman, must therefore be considered as out of the case, so far as they are relied upon as establishing a paper title in the defendants.

The next inquiry is whether the evidence of adverse possession offered by the defendants should have been received. The case states that the defendants offered to shew an adverse possession of more than 20 years, by proving that more than 20 years before the action brought, they were repectively in possession of the premises in question; but disclaiming to have any right or pretence of right to such possession, other than that derived through the before mentioned deed from Abraham to Henry Franklin; insisting that the said deed having been recorded as a deed bearing date in 1800, and prior to the docketing of the judgment in favor of the lessor, and the defendants having purchased on the faith of that record, they were entitled to protect themselves under it as a deed of that date. This evidence was objected to by the plaintiff's counsel, and rejected by the judge. It is difficult to understand from this statement the precise nature of the proof of adverse possession offered by the defendants. There can be very little doubt that the deed from Abraham to Henry Franklin was actually given, and was intended to have borne date in 1808. It was acknowledged on the 29th March, and recorded the 21st day of April of that year. I do not perceive how the defence of adverse possession can be affected by the circumstance, (admitting such to have been the fact,) that upon the record it appeared to have been given in 1800. It certainly was not recorded until April, 1808, and prior to that time the defendants could not have been misled by it; and their subsequent entry cannot be carried by relation back to the period when they supposed that deed was given, for the purpose of aiding or establishing an adverse possession. So far as I understand the nature of the evidence offered, it was properly rejected.

If the possession of the defendants was not originally ad-
verse, then it had not become so in 1826, when Tibbits con-
veyed his interest in the premises to the lessor ; so that the
lessor is entitled to recover the whole of the premises, and not
a moiety, if he can recover at all.

The case of *Juckson, ex dem. Haines and others*, v. *Wood
and others*, 5 Johns. R. 278, sanctions the practice of uniting
several defendants in ejectment in one suit, where the plain-
tiff's title in relation to all is the same, although their posses-
sions may be several, and not joint. The jury in that case
found each defendant separately guilty, as to that part of the
premises in his possession, and not guilty as to the other parts
possessed by the other defendants; and it was held that the
plaintiff was entitled to judgment against all the defendants
severally, according to the verdict. The verdict in this case
is in the same form. This practice was also recognized in
*Jackson* v. *Scoville*, 5 Wendell, 96.

The plaintiff must have judgment accordingly.